The State v. Grimes.

---

THE STATE v. GRIMES, *Appellant.*

1. **Appellate Practice:** EXCEPTIONS. Where no exceptions are saved to the action of the court in giving or refusing instructions, and its rulings in that regard are not assigned as grounds for new trial, the appellate court will not review the instructions.

2. **Maliciously Killing Cow:** STATUTE: EVIDENCE. The evidence in this case examined and *held* sufficient to support a conviction of defendant under Revised Statutes, section 1374, for maliciously killing a cow.

*Appeal from Butler Circuit Court.*—HON. JOHN G. WEAR, Judge.

AFFIRMED.

*J. C. Sheppard* and *C. D. Yancey* for appellant.

(1) The evidence offered by the state wholly failed to show that Lucas' Cow, that was found dead,

was the same cow that witnesses think they saw defendant shoot. (2) The conflicting and doubtful character of the testimony, taken in connection with the omission of the court to properly instruct the jury, should reverse this case, so that in a new trial the jury may be guided by proper instructions in arriving at its finding, as to the guilt or the innocence of the defendant; for it is clearly the duty of the trial court to give necessary instructions, whether asked to do so or not. *State v. Banks*, 73 Mo. 592 ; *State v. Palmer*, 88 Mo. 568. And when the state fails to instruct the jury it constitutes reversible error. *State v. Banks*, 73 Mo. 592.

*John M. Wood*, Attorney General, for the State.

(1) The instructions are not contained in the record and no error is assigned in the giving or refusal of instructions in the motion for a new trial, and the action of the court in this particular is not the subject of review by this court. *State v. Burk*, 89 Mo. 635. (2) There is no dispute but what the cow found dead was the Lucas cow. The testimony of the two witnesses, Mrs. Green and Hughey Green, alone fully justified the jury in finding defendant guilty. This court has repeatedly held that it will not disturb the verdict of the jury on the ground that it is against the weight of the evidence, unless it clearly appears that the jury acted from prejudice or passion. *State v. Lowe*, 93 Mo. 547 ; *State v. Cook*, 58 Mo. 548 ; *State v. Musick*, 71 Mo. 401 ; *State v. Warner*, 74 Mo. 38 ; *State v. Hammond*, 77 Mo. 158.

BRACE, J.—The defendant was indicted and convicted under section 1374, Revised Statutes, 1879, for maliciously killing a cow, the property of Dennie Lucas, and his punishment assessed at imprisonment in the county jail for six months and to pay a fine of fifty dollars. The bill of exceptions contains nothing but the

evidence and the motions in arrest and for a new trial, and no exceptions were saved to any action of the court except the overruling of said motions.

The indictment is in good form; no error appears upon the face of the record proper, and the motion in arrest was properly overruled. No question arises on the record as to the action of the court in regard to instructions, as no exceptions were saved to its action in respect thereof, nor was any such action assigned as ground for new trial or preserved in the bill of exceptions. The only question in the case is, does the evidence support the verdict? It will only be necessary to set out the material evidence in chief of some of the state's witnesses to show that there was ample testimony to take the case to the jury; its general tenor and force was not varied by the cross-examination.

Dennie Lucas testified: "I owned a cow on the eighth of August last. This is the cow that was shot. She was a sort of sorrel color with a heart in her forehead; red and white spotted; pretty good-sized cow. The cow did not come up and I sent a boy to hunt her. I went, next morning, back of defendant Grimes' fence and the cow was there dead. I saw drops of blood on her hair. Her bag was cut through. The cow I found dead was the same cow I have described. This was August 11, 1886."

Robert N. Mabrey testified: "I live in Poplar Bluff. Know defendant. I knew him August 8, 1886. I saw him on that day, the eighth day of August, 1886. This was Sunday morning that I saw him. I know Dennie Lucas. I did not know a cow that belonged to Lucas at this time. I saw defendant standing in an acre lot. I saw a cow in the lot. She was a medium-sized red cow, with a lime-colored stripe running down her back; had short horns, and a bell on. I was about one hundred yards from her. She was in defendant's inclosure. Grimes was there with a gun in his hand. I heard a shot; saw smoke; saw the cow run; saw smoke

The State v. Grimes.

about fourteen feet from the ground. The cow was running pretty peart when I saw her. She was going southwest. I never saw the cow any more."

Mrs. Green testified : "On the tenth of August I saw a cow standing in Grimes' yard. I saw him come out of his house and shoot the cow about twelve o'clock; this was Tuesday ; she was a red and white cow ; a good, big cow. I suppose she had horns, I never paid much attention to her. She went down on the outside of the fence. The boy drove her in the direction she was found. She stood on the outside of the fence about fifteen minutes. The boy then drove her off, and she reeled and staggered as he drove her off, as if about to fall. I was on my front porch. The cow run and got over the fence when he shot. * * * I did not know this was Lucas' cow."

Hughey Green testified : "I know defendant, Casey Grimes. Have known him three or four years. I saw him last August. Saw him on Sunday and Tuesday, the eighth and tenth of August last. I saw defendant a little after twelve o'clock. I saw him going home and saw him after he got home. He went in the house, got his gun and shot Lucas' cow. I did not know whose cow it was at first. I had seen Lucas' cow before. I knew Lucas' cow ; she was a red and white spotted cow. I do not remember whether she wore a bell or not. Grimes and the cow were about nine feet apart when he shot her. I was on our front porch. She struggled around in the yard and then got outside and struggled around, and then Bill Grimes drove her off, and she died down by the fence. Grimes then went in the house. Bill Grimes came in in fifteen or twenty minutes and drove her off. I saw this cow next day dead, down in the direction of where Wm. Grimes drove her. This was the same cow I saw Grimes shoot at. Mr. Lucas said it was his cow. I looked at the cow. She was shot in the left side. She was burnt with powder, and blood was all over her on left side."

The judgment is affirmed. All concur.